Good morning, Your Honor. Russell Marchak. I'm retained counsel for the petitioners in this matter. And I just wanted to start off by making a brief statement and turn it over to my co-counsel here. My name is Mark Weaver. I'm appointed counsel by this Court, amicus curiae, on behalf of the petitioner in this matter. The two major issues in this case are the immigration judge's misdirection of the petitioners in this case to not have presented their additional hardship evidence when she told the petitioners at the first merits hearing that they had adequately presented hardship evidence. She was only concerned about the physical presence issue. And the other issue being the judge's, in her decisions, completely leaving out the principal hardship of the female respondent, her having had recent brain surgery. I was struck in this case by my review of the transcript. Specifically, the judge, from the very outset of this proceeding, of the merits hearing, took over the questioning. Respondent's counsel first called the male respondent, asked one question, the judge took over the questioning, never turned it back to petitioner's counsel. This happened the same way for the female respondent. The petitioner's counsel did manage to get a few questions at the end of the female, I keep saying respondent, because that's how we refer to it in immigration court, the female petitioner's testimony, and then there was one other witness on physical presence. The judge did the same thing. Then the judge went on to reset the case again for physical presence testimony only, never giving respondent's any warning that she was reversing herself on this tentative ruling that she had made about the hardship issue. And then in her decision, not only did she fail to address this brain surgery that the female respondent had recently had and all the effects that this would have on the U.S. citizen daughter, but her whole analysis of the hardship issue was about a page and really didn't go into any details about hardship at all. I know this court is not able to make a ruling about hardship per se. In fact, the only way that you can even look at hardship is in terms of prejudice and the due process argument. But the court can make a ruling on whether or not the judge applied a correct legal standard of hardship, and I'm going to let counsel speak to this issue. Anyway, that's basically the statement that I wanted to make. Thank you, counsel. As a threshold matter, this court has jurisdiction to review questions of law and constitutional issues, even when the underlying opinion is a discretionary determination. Let's begin with that. Where is the judge's misstatement of the law? The judge does not recite a legal standard at all. The only sentence that she recites, even purporting to be a legal standard, is that she is assessing extreme and unusual hardship. And that's standard. I've seen a lot of these cases. So where is the legal error or the constitutional error that gives this court jurisdiction to review this? Well, the legal error, even had she recited what purportedly was the proper standard, which would have been that she needed to, under a matter of raciness, to assess the hardship factors in their totality in a cumulative analysis. And, you know, as a preliminary matter, to identify in a way the relative quantity and quality of hardship. Had she even recited those standards under this court's precedent, that would not have been enough, if it was obvious from the decision that she did not actually use the correct legal standard that she was in boilerplate reciting. Okay. So where's the legal error that gives us jurisdiction? The legal error is that she ignored one of the factors in their entirety. Which is which? Which is the medical condition of the female. It's referred to on page four. Page four of the IJ's decision says she is healthy at present. She did have surgery June 6th of 2003. She spent four days in the hospital and must visit a doctor every six months. That refers to the cross-examination. How can we say that the IJ ignored that factor when the IJ is right there in the IJ's decision? Well, I think that was in the context of relating the testimony of all witnesses. I think that's a misstatement of the testimony because she was not healthy at present and visiting the doctor every six months. She had had an MRI three months previously, which the results of which said, although the tumor has not regrown, the situation needs to be monitored. We recommend that she's evaluated and that she's referred to an endocrinologist for life for a continued evaluation. But that evidence was not provided to the IJ. That was provided to the IJ. At what point? That was provided. Just tell me the point of the proceedings. This was actually attached as supplemental material during the prior to the decision, Your Honor. That's in several. The second hearing. Now, there was a first hearing that was continued because the IJ said tentatively, I think you've satisfied hardship, but I have a problem with the duration and her stay in the United States. So there was a continuance, correct? That's correct. And somewhere around March 8, 2004 or something, you came back on a hearing thought to be relative to the testimony about her stay in the United States, the term. There was an attempt to contact the doctor on the phone and finally, as I remember it, the IJ said, no, I'm going to go on the fact that I don't think you've satisfied the hardship. Now, these documents you're talking about were attached to the pleadings that were filed for that March 2004? Prior to that, Your Honor. This is and it's cited in my brief to the administrative record. And these are documents provided by the petitioners as part of their original material, which referred to, which have doctor's reports, which I quoted in my brief, which state that the evaluation of the MRI on September the 18th, 2003, the recommendation that she is to be referred to an endocrinologist for life. And I can get that. Counsel, with that, was there any evidence in the record that suggested that she could not get adequate medical care in Mexico? It's one thing to say that she needs medical care. People all around the world need medical care. Was there evidence in the record that suggests that she could not get adequate monitoring of her medical condition if she were returned to Mexico? I think that was the, that was not explicitly referred to in the record. It was implicitly, though. It was implicit in what? In the fact that the mail respondent, if he was unable to gain medical insurance in Mexico, that there would not be the availability. That would be a question of insurance, but it doesn't go to the question as to whether there are qualified doctors in Mexico. And I think, but I think backing up just one step, the fact whether or not that her condition could be properly treated in Mexico, that would have been part of her legal analysis. It's one thing she would need to identify the factor, which is there's a medical condition that the mother suffers, and then she needs to then do the next step, which is, through analysis, conclude by the fact that she did not, for instance, bring up any evidence that a Mexico doctor could treat her brain. Now you're throwing me, because we're looking at the legal issue, and the legal issue is whether the totality of the circumstances were considered. Judge Bybee has clearly shown you where she did, where he did consider the condition of the female, if you will, the mother. Now he did say, the IJ did say that she was healthy, and you recited it at present, but she did have surgery, etc. Now, if you want to go down the next level, and why I asked you about where this information was, if it was before the IJ, now we're talking about the discretionary function. If she had never mentioned the mother at all in the decision, then I'd say, well, we've got a problem here, because there was evidence in the record. There's all that evidence in the record. We can't drop the next level lower, and I'm getting a problem with your argument, because I can't quite see where the violation occurred of the legal standard. The violation occurred of the legal standard because she ignored the factor completely in her legal analysis. Yes, she mentioned it in the recitation of testimony. She never addressed it in her legal analysis as even being an issue. I know in your brief you placed a lot of weight on the statement at the bottom of page 5 of the IJ's decision that the only additional factor is the male respondent's medical condition, and that's a lot of weight to place on an oral decision coming from an IJ, when one page earlier she has acknowledged that the mom did have a medical condition. I think in the context of everything else that occurred in this case, it cannot be construed as just simply her analyzing and implicitly ruling that because she didn't mention it in her legal analysis, she must have considered it and come to a conclusion that it wasn't the burden, that that factor did not come out in the respondent's favor. I think in the greater context of this case, considering the due process issues that Mr. Marshak mentioned where she was clearly in a hurry, the mandate from the chief judge to complete the case, the fact that she had reversed course. I understand all that. I really have a problem now. I was tracking along until we got here. What I'm having a problem with is that if you see the Racinus case that you cited in your briefs, I remember, those cases sort of set the global standard, i.e., you've got to consider all of the total circumstances. What we're down into now is when the I.J. goes into the analysis, and let's stay with the legal side, the I.J. does on page five talk about the extreme and exceptional and unusual hardships. Where is the case in the Ninth Circuit that says in considering the total of the hardships, when you're talking about hardships that are suffered by the child here in this case because that's the only way these two folks are going to be in here, where is the case that says that if you don't explicitly talk about the hardship to the father, the hardship of the father that goes on to the child, and then the hardship of the mother that is fostered onto the child, which then provides the relief, where is the case that says the totality means that you've got to make those explicit determinations? In this case, again, Judge Bybee's pointed out that the judge in her language did say the only additional factor is it's sort of mish-moshed, and it might be totality, but where is the case that shows it has to be so individualized? Your Honor, if I had come across the case, I certainly would have mentioned it. And that's my point. I am, too. That's why I questioned you so carefully about what the judge had in his record because I've reviewed the record, but I want to go back and see specifically what you've got in there. You put your whole case, as I take it, in writing before the judge, and you've made in your brief references where the judge could have found the fact that she had a continuing problem because of her brain tumor. Is that correct? I believe that's correct, Your Honor. I wasn't the person below who did that. No, no, you indicated first that in your brief you made reference to these additional filings that were before the judge, before that March hearing, that was supposedly to be done relative only to the term of how long she'd been in the United States so that the judge, as I understood your argument, had everything in writing before her, before she made her last decision. Well, not everything. I mean, there are materials. No, just a second now. I mean, that's a different issue. Okay. In terms of she had evidence before her at the time of her decision that went to the medical condition of the mother, quite clearly. No, I understand that precisely, but the medical condition of the mother, as delineated by the judge in her decision, was that she's healthy now and she's going to have to have six months checkups. You told me, as I remember, that in the record, in the supplemental record, it not only had that, but it had shown that there were MRIs or something that showed that she was continuing problem with that tumor. I didn't read the brief. That is correct. No, what you just said was correct. There was evidence before the IJ that she was, in fact, not healthy, that she was still recovering. She was being monitored to determine. Okay. In the totality, then, why hasn't the judge, in the discretionary function, taken everything you've told us, digested it, and came up with this decision that seems to be in the lower level below the legal standard? If it was all there, I got the impression that for some reason, if you look at the motion to reconsider, the notice of appeal, and the brief to the BIA, you've indicated that there was more evidence, a letter from the doctor regarding Mrs. Salcedo's medical condition, showing that she still suffers from symptoms of tumor, background evidence, et cetera. That's arguing what you said was a discretionary function in the appeal brief to the BIA was a discretionary function of the IJ. Well, I think that that's a separate set of findings that retain counsel. What I'm getting at is that there was medical evidence before the court, at the time she made the decision, which indicated that the petitioner was not completely healthy. Well, if that was before the judge, and the judge found it was healthy, isn't that the judge saying, I've looked over the evidence, I think she's healthy enough that that is not going to be an imposition on the child? Well, I don't think in a statement of facts where she is reciting testimony which has not been challenged by the government, that is, this is undisputed evidence that she's presented that she's not healthy, that the judges, and this is kind of, you know, the fact is that if she were to make the conclusion, come to the conclusion that even with all these pieces of evidence that she is healthy enough, I think the proper place for that is in her legal analysis, not just the recitation of the testimony. She was merely reciting the testimony. In your brief to the BIA, you said that the IJ declined to accept any further documents and or testimony from the witnesses regarding Mrs. Salcedo's physical presence, instead relied upon the respondent's application. So I take it that they had everything you had. Do you have more that the IJ never saw? Well, this is the – now, I'm only amicus counsel appointed by this court, but it's my understanding that there was additional evidence that retained counsel was ready to present because time had elapsed between these two hearings, that retained counsel was prepared to present, retained counsel in their appeal to the BIA stated, we have this evidence that we wanted to present and we did not, we weren't able to present it, which would have gone to more specifically. Because you were prevented from introducing it at the hearing or because you just didn't? I think it – I think what the. . . Didn't because you thought maybe it wasn't necessary based on what the IJ had tentatively ruled before. The IJ had said, what I want to hear at our next hearing is about continuous physical presence. You've satisfied the extreme and unusual hearts of. . . No, no, no. I didn't say that. The government never disputed it. I mean, this is the thing. The government at the IJ level never presented any sort of evidence to dispute and question the judge's tentative ruling of extreme and unusual hardship. And without any additional evidence presented at all, the judge shifted course. But I don't think we need to go down the constitutional road. I think we can get this. . . We could come to a conclusion on the legal issue itself in that. . . And I do want to refer to. . . You asked for a case before, and I do want to refer to a case called Morales v. Gonzales. And this is not cited, but the citation is 478 F3rd 972. And this is a case where the court. . . What circuit and what date? Ninth Circuit, and it's 2006. It could be 2007. I don't have that directly in front of me, Your Honor. This court. And it was in the context of a CAT claim. However, it was regarding whether legal error was committed in the judge's interpretation of willful blindness. And the court ruled that. . . A CAT claim is a very different standard of review than a hardship determination. Except on this particular element, it was strictly on a legal error basis. Was legal error committed by applying. . . We get a review of CAT claims for certain kinds of legal error in ways that we do not get to review hardship determinations. There's a whole threshold jurisdictional problem here that you don't have in a CAT, in the CAT context, that you do have here. I agree that there's additional hurdles to meet before you even get to this place, Your Honor. I think that the REAL-ID Act solves those concerns. And when looking at other cases that have ruled on extreme and unusual hardship decisions below but have analyzed them for whether a correct legal standard is applied, I think those cases open a jurisdictional door. And then looking at maybe some analogous cases on a CAT issue is informative. And I point out those cases where extreme and unusual hardship has been reviewed at this level after REAL-ID in my brief. And I can also refer to a Frady, which also reviews extreme and unusual hardship case. But that Morales case, it essentially concluded that by ignoring certain testimony in its legal analysis, it was implicitly ignoring the committed legal error by implicitly ignoring the standard that the court had promulgated under willful blindness. The point being that looking at that legal analysis, it was from looking at the legal analysis, that's a basis for us to kind of reverse engineer as to whether the judge applied the correct standard. The judge, as you recall, never really explicitly set forth a standard. She only referred to the husband's medical condition in her analysis. And that was haphazard in and of itself because she never actually concluded that his medical condition wouldn't be treated in Mexico. She just simply concluded that he'd have a job in Mexico, that he'd be able to get a job in Mexico. That was critical because it went to the point as to whether he would be able to support his family and perhaps whether he'd be able to get insurance. And the insurance question certainly had a bearing on the wife's well-being as well. It may well have. However, in the context of the slipshod manner in which his opinion was delivered, I mean, I think there's some serious concerns. And I would urge the court to remand and simply make it, have her, in crystal clarity, apply the correct legal standard, totality of the circumstances, identify and weigh each individual hardship. She did not actually make, she did not weigh that hardship. And I think we don't need to go, I think the constitutional issues are gigantic, and I think that those require reversal. But obviously, if we can get there on simple legal air and just dispose of this case in a remand, I think that's the appropriate solution to just be absolutely certain that this judge did what she needs to do, which is weigh every factor in its entirety. And it seems clear to me that she didn't, that she forgot about, you know, how significant this fact, this woman's health was, and that in her legal analysis, it was so thin that, you know, it's this court's duty to, you know, provide some oversight to immigration judges, especially where their opinions have been adopted in full by the BIA below. And I think this is an appropriate case in which to do it. I think we understand your position, counsel. We've certainly been generous to you on the time. So thank you. Thank you. Let's hear from the government. Good morning, Your Honors. May it please the Court, my name is Ari Nazaroff. I'm with the Department of Justice representing the Attorney General. I would like to first start by addressing Petitioner's contention this morning that they were misdirected during the hearing. Petitioners rested their hardship case. And if you look at page 142, this is 10 pages before the controversial statement. At page 142, after the female petitioner testified that she did have a tumor, it has been removed, she was back working full time as a restaurant manager. And she's cross-examined. The judge, if you look at the line five there on page 142, Petitioner's counsel says, no more further questions, Your Honor. So then the judge asks, who's your next witness? And she says, I have a sister here to testify in 10 years unless the issue has been resolved. That's fine. Why don't you go get your witness? And then there's testimony as to physical presence. If we look at page 152, there's been testimony as to physical presence. There's been cross-examination. It didn't really rise to the 10 years. The judge asks the Petitioner's counsel, what do you want me to do? I can give you a decision. Nobody at that point said, we have more hardship evidence, Your Honor. We'd like to put on Dr. So-and-so. We'd like to do this and that. No one said that at any point. And then we come to, this is a full page before the controversial statement in which she does say, I'm not going to make a final decision, and it's tentative. And again, nobody rises to say, well, we're going to have all this testimony, Your Honor, but if you're ruling right now on hardship, then we won't present it. That never comes up. They keep talking about additional evidence, additional evidence, additional evidence. What is the additional evidence? What is the but for additional evidence? They have to show prejudice to show a due process violation. Can we stop right there for a second so I can clear up my mind on what was behind this transaction you're talking about? Are you in agreement with counsel to the effect that in their moving papers or in supporting papers wherever, that there was evidence relative to the mother's health, the tumor, if you will, that showed that she was not healthy, i.e., that there were tests or whatever that would show that she had a continuing problem with the tumor in her head, which would be in contrary to what the judge found, that she was healthy? Well, she had had a tumor, Your Honor. No, I know that. What's crystal clear in my mind, she had a tumor and it was removed from the side of her head or something. And that she then went back to work and she was working. What I'm not sure about is what the judge had in her possession at the time she made these rulings, the transcripts portions you're talking about, whether she had some further evidence of the health of the mother beyond the fact that she had the tumor or that she was released and she went back to work. And it seems to be that that seems to be the question. It was stated here that, oh, we had some other materials that we could have presented. And, indeed, that was generally referenced in their notice of appeal to the BIA and also in their brief to the BIA. And you didn't file a brief in the BIA, so there's nothing counter to what they said in their brief. So I'm just wondering what you think the IJ had in her possession relative to the current or further condition of the mother after the operation. Well, I think it's the IJ goes through the exhibits on pages 98 through 102. They had over three years to present evidence. And I believe that evidence was before the IJ. Now, all their arguments right here this morning, which talk about legal error,  Actually, Petitioner at the end said the IJ should have weighed every factor in evidence. And that goes to discretion. That was my question. So if you're setting up at the legal end, you agree, though, that if there was legal error, we can review that? Absolutely. Okay. If we are reviewing legal error, how deep do we have to go into the decision of the IJ to determine whether the totality of the hardship circumstances were considered? Well, I think it's important. I think to allow an alien to characterize border immigration assessment of the facts, as they are in this case, when the determination that is inherently discretionary, as a legal error, destroys the entire contract of discretion and eliminates any exercise of discretion, thus turns discretion into legal error. Well, by that, the question is, go up one step. What does the IJ have to do to satisfy that legal error or to satisfy that legal standard? And we've got two Petitioners who want cancellation of removal, as I remember it, based upon the fact that there would be hardship on the child. That's right, Your Honor. And the immigration judge, you know, has to be some prejudice to the case for there to be a due process violation, which they are arguing. In this case, the IJ considered all the evidence. The IJ does not have to discuss every piece of evidence, as Petitioner contends. The immigration judge in this case did consider. He listed all the evidence from page 98 to 102 and analyzed that evidence in totality and made a discretionary determination. The weighing of the evidence, Your Honor, that's the key. What they're asking is they want to re-weigh the evidence. But that can't be done because that's a discretionary determination. I think what they were arguing is that the IJ should have discussed the hardship to the child based upon the mother's, if you will, brain tumor condition. That's right, and that's a factual analysis which goes to the weight of the evidence, which is a discretionary determination. So if the facts before her would indicate, IJ that is, the facts before the IJ would indicate, that maybe the tumor condition was ongoing and may be detrimental to the mother, i.e. detrimental to the child, that the IJ in finding that the mother was healthy is still within the discretionary function. Is that what you're saying? That's right. Any kind of that factual analysis, Your Honor, of weighing the evidence, this medical evidence against that medical evidence, is a factual finding which goes to discretion, which this Court has indicated it's not in the business of reviewing. So your position is then that we should dismiss for lack of jurisdiction here? That's right. We move. Under what circumstances? What would it take for this Court to be able to exercise jurisdiction over a hardship case? I would say, Your Honor, if we look at Colmenar as an example in this case, for example, I've read to you from the transcript. If they had gotten up and said, we have Dr. Smith ready to testify, and the IJ said, no, I'm not listening to Dr. Smith. If the IJ came out in Colmenar and said, this is the decision I'm going to make before hearing any of the evidence, they didn't do that here. Arguably, that would be a due process violation. That's right, Your Honor. But that's what they're arguing. They're arguing due process violation. And they're arguing we didn't present this evidence. They don't say what evidence they didn't get to present. And again, if the IJ would have said, you can't present any evidence. But in this case, Your Honor, the IJ says, you have other witnesses? What do you want me to do? There are how many continuances in this case? Five, six continuances to present evidence. Petitioner argues before this Court that they had to quickly make a decision. Well, not at all, Your Honor. You look at the transcript. The IJ says, you don't seem to meet the physical period. Do you want to get more witnesses? We can postpone until you get those witnesses. This is Monday morning quarterbacking here, Your Honor. They want to replay the game. They put their evidence forward on hardship. They arrested their case, found out it wasn't enough. Suddenly, they want to go back and redo it again. Well, let's leave it there, and let me ask you the next question then. In the brief to the BIA, the brief in support of their appeal, you did not file a contrary brief. Your Honor, the Department of Homeland Security represents the government before the board. So it would be the government's brief, and Homeland Security would be the brief? That's right, before the board. We only come in when it gets to the courts. Okay, gotcha. In the brief, however, of the petitioners, they indicate that they were led to believe that the hardship requirements were met in the case, and they only needed to submit additional evidence regarding Mrs. Salcero's physical presence. They said if they would have known that the hardship case was still an issue, they would have provided further evidence on March 8th, three months after the first merits hearing. Such evidence would have included and then indicate an update letter from the doctor showing she still suffers from the symptoms of a tumor, background evidence regarding unavailability or inaccessibility of medical treatment for Mrs. Salcero's condition. Now, what do we do now? Because the BIA didn't really rule on that. I think they went down to the next level and said the IJ found, under the discretionary factors, that there was no hardship. It seems as though they've raised the issue that they were precluded from filing evidence or presenting evidence that they had more evidence. Your references to the transcript would seem to be the contrary at the hearing. Would that be your position? That would be my position. They arrested their hardship. They presented all their hardship evidence. The IJ said, what else you got? You got other witnesses? And they moved on to the other part. Now, sure, after they lost, they said, oh, we've got to get more stuff. Prejudice. Let's get it back. I mean, the floodgates would open. Every time they lose a case, they would say, oh, we should have gotten more evidence before the IJ. It's prejudicial. Let's have a new hearing so we can keep doing it. This allegation or this support in their brief is based upon the fact that they were deceived or they were led to believe that the hardship requirement was satisfied. You would say that we'd go back and read those transcripts and you would show that they arrested their case. Is that the way you'd answer that? They arrested their case. At this point, we're just going to stand by our briefs and ask this Court to dismiss the petitions for review. Thank you, Your Honors. Mr. Weaver, do you have anything in response? I'll allow you a minute. Just briefly, Your Honor. When the next merits hearing came about, evidence that just simply was not in existence was then in existence. What I mean to say, Your Honor, is that between merits hearings, there was the ability to get an update letter from the doctor. This was not something they could have submitted at the prior merits hearing before the judge ruled tentatively. Can you point to us where you were precluded from submitting that? It doesn't seem unreasonable to me that since this was a tentative ruling and you'd want to have a full record, that you come in and say, Your Honor, we had understood you to have tentatively ruled in our favor. That's not a final ruling. We'd like to submit an evidence. If Your Honor wants to hear our argument, we'll be happy to tell you about it. But here's two more letters from doctors dating the mom's medical condition. Any place where the I.J. said, I won't receive the evidence? No, Counsel. Any place where you offered it in evidence? Counsel, it's my understanding that, I mean, Your Honor, it's my understanding that Counsel did not go take those steps in between the merits hearings. Okay. But this was only a tentative ruling. It's difficult to say you've been deprived, you're due process, you've been suckered into doing something. Yes, it should have given you some confidence, but if the I.J. has just said this is tentative, you've got another hearing, it seems to me you want to be well prepared for that. Well, in this context when the government has not presented any additional evidence. But this is your burden. And this kind of evidence is not in the possession of the government. The government doesn't ordinarily, unlike a Social Security case, doesn't take your client out and subject her to additional medical testing. So this is your burden to prove. Your Honor, may I just address one other thing he spoke to briefly? I want to cite a case. It's a Fridi, A-F-R-I-D-I. It's a 2006 decision. It's a Fridi v. Gonzalez. And the citation is 442 F-3-12-12. And that's a case where this court explicitly distinguished between the concept of legal error versus reweighing the evidence. And this court said that in that case the petitioner argued that the BIA failed to apply the proper legal standard in determining whether his crime was particularly serious because the BIA misinterpreted our legal precedent in defining the crime. This argument raised a question of law. It dismissed the government's contention that this was simply reweighing evidence. And this court said, while we cannot reweigh evidence to determine if the crime was indeed particularly serious, we can determine whether BIA applied the correct legal standard in making its determination. And in doing this, it looked to the analysis that the BIA opinion set forth, including its reliance on one single fact as opposed to additional facts, which would have made it clear that they had been applying the correct standard, as opposed to this one particular fact, which made it clear that they were not applying the correct legal standard. And just shifting back to that legal argument, without going to the due process issue, looking at the legal analysis where I think we need to look, I don't think we can just simply look at the factual, the statement of facts by the IJ. I think we need to look critically at that one-page legal analysis to assess whether the correct legal standard was applied. There's no legal standard stated. She does not mention an entire factor, which is identify and weigh. That's why I think that you've raised these arguments. Thank you. I appreciate it. Yes. If you'll provide any citations that were not in your brief that you've given us from the podium, if you'll provide them on a tear sheet and provide them to counsel as well. Absolutely, Your Honor. Thank you. We thank both counsel for the argument. Mr. Weaver, in particular, we acknowledge your thoughtful participation in our pro bono representation program. Thank you very much. Monroy v. Gutierrez then will be submitted. Next case on the docket is Gutierrez-Alcaraz v. Mukasey. Pardon? Oh, I'm sorry.  I'm sorry. It's Polito v. City of El Segundo.
judges: Bowman , Brunetti, Bybee